Lipscomb, J.
This suit was brought by the appellants to recover a league of land granted by the Government of Coahuila and Texas to William E. Hunt *194 as.a colonist in Austin’s colony. The plaintiffs claim, one of them to he tlie widow, and the others the children of the said William B., the grantee. The defendants claim under one Robinson.
The following- are tlie material facts collected from the record: The land sued for was granted to Hunt, who in a short time sold it to Robinson, and received in exchange for it six hundred and forty acres of other land, one hundred dollars, and' a horse, the value of -which was not in evidence. Hunt went into possession of tlie laudsold to him by Robinson. This ivas on tlie 34th December, 1832, and Robinson went into possession of the league aud made a small improvement upon and then left it and resided at his oíd place until his death. There was no evidence of any continued possession until 1S3S, though it had been frequently occupied in tlie meantime, and considerable improvements made on it, hut under what title was not in proof. liTom 1838 down to tlie trial it was claimed under Robinson. It was in evidence that tlie present defendants, at the time they purchased, about 1841, had notice that it was claimed by the plaintiffs. Thc'plaintiffs remained upon the land received from Robinson, making improvements oil tlie same, down to 1843, and exercised ownership by routing it out down to tlie 12th of February, 1850, when they sold it to one Carter, after they had commenced this suit. It was in evidence, and not controverted, that tlie land received by Hunt from Robinson, was worth more than Hunt’s league.
A deed, purporting to be for the consideration of three hundred dollars, for six hundred and forty acres of land from Cummings to the plaintiffs, dated 1st April, 1841, was read in evidence by the plaintiffs,^but no evidence was given to show that it was the same land that, Robinson liad deeded to Hunt.
The record is so very imperfect that it is impossible to ascertain from it what were the issues that went to the jury. It is, however, understood to be admitted by the counsel for the parties that all were stricken out by the court, upon the plaintiffs’ exceptions, but.two, one being- the plea of not guilty, and the other possession in good faith and valuable improvements made. There are only two errors assigned that we regard as material to be noticed.
First, admission of special matter in avoidance under tlie plea of not guilty, and second, the rejection of the evidence of the plaintiffs to prove the cover-ture of one of the plaintiffs, and infancy of others, to bring- them within the exceptions to tlie statute of limitations. Tlie plaintiffs offered this testimony by way of rebutal to the evidence of the defendant to sustain the bar of the statute. This they clearly had a right to do, aud it is not perceived why it was rejected, and for this error we would be bound to reverse the judgment if we rested om- opinion on the statute of limitations. But it will be seen, hereafter, that this ground of defense is thrown out of our consideration, and it may be admitted that the defendants did not make out that defense. With this admission, if the judgment cannot be sustained, it ought to be reversed.
The appellants object to the ruling- of the court admitting- special matter of defense under the pica of not guilty. This being an action to try titles to land, there can bo no question that, under the article 3235 of the Digest, the evidence was admissible. It ivas so decided by this court in Punderson v. Love. (3 Tex. R., 60.) The material facts in this case were specially pleaded by the defendants, but their plea was stricken out by the court below, on the exception to the plea taken by the plaintiffs. We presumed that the court was influenced by the consideration that those facts could be given in evidence, under the plea of not guilty. That such matters could be so given in evidence is no sufficient reason' for objecting- to those matters being specially pleaded. It is certainly a better mode of presenting (.hem, and more in harmony with our general system of practice, as it advises the opposite party of the grounds of defense, aud prevents a surprise by the in troduction of evidence not an ticipated, and therefore could not have been objected to by the plaintiffs.
We will now proceed to examine those matters of defense, and see if they sustain the verdict aud the judgment in tills case, which we are called upon *195 to revise. The statement of facts has already been recited and will not again be repeated, only so far as may bo necessary to make our views of the law applicable to and resulting- from them more clearly understood. The contract of sale, and exchange between Hunt and Bobinson, by which Hunt sold to Bobinson 1 lie laud in controversy, and received from him in payment six Hundred and forty acres of other land, which was conveyed to him by deed, and tiie furl her consideration of one hundred dollars and a horse, so far as it related to the land in controversy was illegal and void, because it was entered into at a time when Hunt was forbidden bylaw to alienate the land. It was so held by this court in Hunt’s heirs v. Robinson’s heirs. (1 Tex.R., 748.) The record of that suit lias been made a part of the evidence in this case, from which it appears that Hunt, at the time that ho entered into the contract of sale, did not give Bobinsou a deed for the land, but gave his bond for title. The suit was brought by the heirs of Bobinson to compel a specific execution of this contract. This court, on an appeal, refused a specific performance, on the ground that it was in contravention of law and void, and the decision and judgment were based solely upon the ground that the bond for title was illegal, because the sale was forbidden by law. The court did not assume to pass upon the equities that may have arisen between the parties, because no such were presented in the case; at most it only determined tlie legal title to be in the lieirs of Hunt. Now the legal title may he in one, and the equitable title, growing- out of the acts of the parties, in auother. It is an acknowledged principle in equity that courts exercising- equity jurisdiction will sustain such equities against the legal title, and suspend the enforcement of such legal title, or hold that the legal title shall be considered as in trust for the benefit of the one holdiug- the equitable title, and if the equities are made out it will always require them to be satisfied before the legal title can be enforced. A contract may be void under the statute of frauds; yet if the conduct of the party setting up the invalidity of the contract has been such as to raise an equity outside of and independent of the contract, and nothing else will be adequate satisfaction of sueli equity, it will sustain the sale, though not valid under the statute of frauds. It was so ruled by this court at Tyler, Spring Term, 1852, in the case of Dugan’s Heirs v. Colvell’s Heirs. (8 Tex. R.) Again: the rule is well established that a party to an illegal contract will not be permitted to avail himself of its illegality until lie restores to the other party all that had been received from him on such illegal contract; that so long as lie continues to hold on to enjoy the advantages of the contract ho shall not be allowed to set up to bis advantage its nullity. And it is held that this rule is operative against femes covert and infants. (Womack v. Womack, Tyler, April Term, 1852, 8 Tex. R.; Means v. Robinson and Wife, 7 Tex. R., 502; Powell v. Cummings, 8 Tex. R.)
We will now apply these principles to the facts: that Bobinson and his heirs were permitted to take possession of the land and to make large improvements, and not a word said about enforcing the legal claim to the land by Hunt nor his heirs until 1841, about nine years from the contract and eight after the deatli of I-Imit, and that Hunt went into possession of the land conveyed to him by Bobinson immediately, and died upon it about a year after; that his heirs continued to live on it as their own until 1850, and then sold it, and in their deed to the purchaser described it as the same land deeded to Hunt by Bobinson in 1832; and the further fact that this laud is worth more than the Hunt league, the subject of this suit. Will not these facts, under the principles laid down, raise an equity that will override the legal title to the plaintiffs to the land sued for? We have no hesitation in saying that it does. And it does seem to ns that the moral sense of what is enjoined by equity and good conscience must be exceedingly obtuse to suppose that such flagrant injustice could receive the slightest countenance from any judicatory, however' organized.
We believe that the deed from Cummings to the plaintiff is not entitled to any consideration, even if it had been shown to be for the same land conveyed^ *196 by Robinson to Hunt. It was not made until long after the death of Robinson, and afLer the plaintiffs liad been near nine years in possession under Robinson’s deed. And in the conveyance made by the plaintiffs to Carter they do not describe the land as the same conveyed by Cummings, but as the same conveyed by Robinson to Hunt; and they never offered to reconvoy the laud to Robinson in his lifetime, nor to his heirs after his death.
Note 01. — Rivers v. Foote, 11T., GG2; Hollingsworth v. Holshousen, 17 T.,41; Town of Refugio v. Byrne, 25 T., 193; Mann v. Falcon, 25 T., 271; Stroun v. Springfield, 28 T., G49.
Koto 02. — Whitson v. Smith, 15 T., 33: Clay v. Ooojr, 10 T., 70; Williams v. Chandler, 25 T., 4.
Note 03. — Toas v. McDonald, 13 T., 349; Olay v. Cook, 10 T., 70; Soye v. MeCallister, 18 T., 80; Mills v. Alexander, 21 T., 154; Ledyard u. Brown, 27 T., 393.
There is another point presented in this case that we consider equally conclusive against the plaintiffs, that is, that by the sale of the land received by Hunt in payment for his headlight after the parties were all of age, they have deprived themselves of the ability to restore it and place Robinson’s heirs in (he same condition they wore in before the contract was entered into. This cannot be regarded in any other light than a virtual ratification of the contract after all legal disability bad been removed; and although the legal title to the league in controversy might he still in the plaintiffs, yet it was as trustees for Robinson’s heirs and those claiming under them. Had all of these facts been alleged In the answer in the nature of a cross-bill, and had the defendant prayed that the plaintiffs should he decreed to convey the title, and' those facts found by the jury, we should, without any hesitation, have held that they were entitled to such decree. But the defendants have not asked such decree, and remained upon the defensive only, and by the verdict of the jury in their favor have obtained all that could have been awarded to them under the pleading, and it was only by becoming the actors that they could have obtained more. It caunot, however, be very material where tho legal title is, as it is only held in trust, wherever it may he, for the benefit of the •defendants.
Judgment affirmed.